

# STATE OF RHODE ISLAND
# OFFICE OF THE ATTORNEY GENERAL

150 South Main Street • Providence, RI 02903
(401) 274-4400 • www.riag.ri.gov

*Peter F. Neronha*
*Attorney General*

September 25, 2025

Hon. John J. McConnell, Jr.
Chief Judge
United States District Court
District of Rhode Island
Providence, R.I. 02909

Re:    *Novartis Pharm. Corp. v. Neronha,* Civil Action No. 1:25-cv-387-JJM-AEM

Dear Chief Judge McConnell:

The Rhode Island Attorney General and Auditor General, defendants in the captioned matter, write to bring additional authority to your attention. Subsequent to the filing of the state defendants' objection to Novartis's pending motion for a preliminary injunction (ECF No. 21) and Novartis's reply in support of its motion (ECF No. 30), the United States District Court for the District of Maine issued the attached decision in *Novartis Pharmaceuticals Corp. v, Frey,* No. 1:25-cv-00407 and *AbbVie, Inc. v. Frey*, No. 1:25-cv-00416 (D. Me. Sept. 24, 2025). The District of Maine denied Novartis' and AbbVie's motions for a preliminary injunction seeking to enjoin Maine from enforcing a state law that, like Rhode Island's recently enacted Chapter 288, prohibits manufacturers from interfering with the use of contract pharmacies for the delivery of Section 340B drugs to patients of covered entities operating in the state.

In relevant part, the District of Maine joined the majority of courts in finding no likelihood of success on the manufacturers' preemption, dormant Commerce Clause, takings clause, and vagueness arguments. *See id.* at 1-2. The District of Maine held that the scope and extent of the language and regulations in the 340B statute were insufficient to imply a congressional intent to preclude all state regulation in the field. *Id.* at 16-17. The District of Maine was not persuaded that the increase in the number of 340B claims with the use of multiple pharmacies was inconsistent with the 340B program's objectives. *Id.* at 24. The court further held that plaintiffs' alleged enforcement conflict was too speculative because they failed to demonstrate that claims data is necessary to obtain an audit, and Congress's silence does "not imply that Congress intended to confer on manufacturers a right to be free from all state law requirements regarding drug distribution to patients, contract pharmacies, and claims data." *Id.* at 26-27.

Hon. John J. McConnell, Jr.
Chief Judge
Page 2


As to their dormant Commerce Clause arguments, the District of Maine held that although Plaintiffs argued that manufacturers compete for customers "vertically" in a single market, the roles are meaningfully different and cannot be viewed as similar entities. *Id.* at 29. The court rejected this extraterritoriality argument by adopting the reasoning in *PhRMA v. Walsh,* 538 U.S. 644, 669 (2003), holding that the law at issue did not require manufacturers to sell their drugs to a wholesaler for a certain price or tie the price of in-state products to out-of-state prices. *Id.* at 30. Assessing Plaintiffs' invocation of the *Pike v. Bruce Church, Inc.* balancing test, the District of Maine held that a reduction in Plaintiffs' profitability due to compliance costs or discounts, even if proven, would not constitute an excessive burden on interstate commerce." *Id.* at 31. Accordingly, the state defendants submit that the District of Maine's decision provides further reasons to deny Novartis's pending motion for a preliminary injunction.


Respectfully submitted,

*/s/ Lionel Dutreix*
Lionel Dutreix
Special Assistant Attorney General