Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
T  +1 202 637 5600
F  +1 202 637 5910
www.hoganlovells.com

September 26, 2025

**By CM/ECF**

Chief Judge John J. McConnell, Jr.
U.S. District Court for the District of Rhode Island
One Exchange Terrace
Providence, RI 02903

**Re:** *Novartis Pharmaceutical Corp. v. Neronha*, C.A. No. 1:25-CV-387-JJM-AEM

Dear Chief Judge McConnell:

*Novartis Pharmaceutical Corp. v. Frey*, No. 1:25-CV-407 (D. Me. Sep. 23, 2025), should not alter this Court's analysis of Novartis's claims. Although that decision got one critical fact right, its legal reasoning is irreconcilable with First Circuit precedent.

Here's the key fact: *Frey* correctly noted that Maine's new contract pharmacy law—like Chapter 288—will "increase . . . the number of 340B claims" in the state. Op. at 24. Defendants apparently now concede this effect (at 1), despite having denied it multiple times in their brief. *E.g.*, PI Opp. at 47 (arguing that Chapter 288 will not change "[t]he extent to which 340B discounts subsidize in-state covered entities"); *id.* at 24–25.[1]

This conceded expansion of manufacturers' 340B obligations dooms Chapter 288. 340B discounts do not exist in a vacuum; they set the price of participating in Medicaid and Medicare Part B. These are voluntary Spending Clause programs premised on manufacturers' consent to terms clearly defined in advance under federal law. PI Reply at 9–10, 12. Congress sought to induce 340B participation by balancing the required discounts with the incentive of access to Medicaid and Medicare Part B; in that context, a "further requirement imposed by a state statute would directly interfere with Congress's original intent." *Forest Park II v. Hadley*, 336 F.3d 724, 733 (8th Cir. 2003); *see also Maine Forest Prods. Council*, 51 F.4th 1, 10 (1st Cir. 2022) (finding a conflict where state law "would nullify [an] implicit federal right"); *Verizon New England, Inc. v. Maine Pub. Utils. Comm'n*, 509 F.3d 1, 9 (1st Cir. 2007) (where federal law was "intended to free [parties] from [a] compulsion," state law cannot require the opposite). Congress, after all, chose not to require the very discounts Chapter 288 would mandate. PI Reply at 8.

---

[1]  Many cases cited by Defendants assumed the opposite. *E.g.*, *AbbVie, Inc. v. Fitch*, _ F.4th _, 2025 WL 2699070, at *4 (5th Cir. Sep. 12, 2025) (Mississippi law supposedly does not "require [manufacturers] to sell larger quantities of their drugs at discounted prices than Section 340B requires"); *Pharmaceutical Rsch. & Mfrs. of Am. v. McClain*, 95 F.4th 1136, 1145 (8th Cir. 2024) ("Act 1103 does not set or enforce discount pricing."); *Novartis Pharms. Corp. v. Bailey*, No. 2:24-CV-4131, 2025 WL 489881, at *4 (W.D. Mo. Feb. 13, 2025) ("S.B. 751 does not set or enforce discount pricing.").

Hogan Lovells US LLP is a limited liability partnership registered in the state of Delaware. "Hogan Lovells" is an international legal practice that includes Hogan Lovells US LLP and Hogan Lovells International LLP, with offices in: Alicante  Amsterdam  Baltimore  Beijing  Berlin  Birmingham  Boston  Brussels  Colorado Springs  Denver  Dubai  Dublin  Dusseldorf  Frankfurt  Hamburg  Hanoi  Ho Chi Minh City  Hong Kong  Houston  London  Los Angeles  Luxembourg  Madrid  Mexico City  Miami  Milan  Minneapolis  Monterrey  Munich  New York  Northern Virginia  Paris  Philadelphia  Riyadh  Rome  San Francisco  São Paulo  Shanghai  Silicon Valley  Singapore  Tokyo  Washington, D.C.  For more information see www.hoganlovells.com.

In holding otherwise, *Frey* assumed that multiplying 340B discounts was not "inconsistent with the objectives of the 340B program." Op. at 24. But the Supreme Court has rejected precisely this reasoning: "[I]t is not enough to say that the ultimate goal of both federal and state law" is the same because state law may also "interfere[ ] with the methods by which the federal statute was designed to reach this goal." *International Paper Co. v. Ouellette*, 479 U.S. 481, 494 (1987). That is what Chapter 288 does: Congress set the terms of participation in the program, including the triggers for 340B discounts and their limits. Chapter 288 would erase Congress's limits. As the State admits (PI Opp. at 54), this law was a "response" to the Third and D.C. Circuits' *Sanofi* and *Novartis* decisions, intended to nullify the guardrails those courts determined Congress had chosen to allow. At bottom, the *Frey* court's reasoning rests on supposing Congress was agnostic about how much it should cost to participate in three federal drug-pricing programs. But that is contrary to what the Third and D.C. Circuits concluded, and courts should not assume that Congress legislates so haphazardly. PI Reply at 12; *see also Hyde Park Partners, L.P. v. Connolly*, 839 F.2d 837, 852 (1st Cir. 1988) (when Congress strikes a "balance," its "point of equipoise" is assumed not to be "randomly or uncarefully chosen").

*Frey*'s field-preemption analysis also missed the mark. It cited neither *Astra* nor *French v. Pan Am Express* (Op. at 15–18), even though those cases together are dispositive. PI Reply at 7. Instead, the court held that 340B pricing obligations at contract pharmacies fall outside the federal field because the federal statute does not mention this specific topic. Op. at 17–18. But fields are not gerrymandered around the novel requirements a state seeks to impose—that reasoning would foreclose *all* field preemption. In *French*, for example, the field was "pilot regulation related to air safety." 869 F.2d 1, 4 (1st Cir. 1989). The federal regulatory scheme was silent about whether pilots' drug tests must be conducted "in conjunction with a bona fide rehabilitation program," *id.* at 2 (quoting R.I. Gen. Laws § 28-6.5-1(C)), but the First Circuit did not deem that state requirement outside the area governed by federal law. *Id.* at 4–5. A field is the "area the Federal Government has reserved for itself," not only a rote list of the things federal law affirmatively requires. *Arizona v. United States*, 567 U.S. 387, 402 (2012). Here, that field is the scope of manufacturers' 340B obligations—an area reserved to HHS because of the 340B Program's "interdependent nature" with Medicaid. *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110, 120 (2011) (quotation omitted).

The *Frey* court's remaining preemption holdings fare no better. Despite acknowledging that HRSA's ADR regulation facially encompasses the conduct Chapter 288 would make unlawful, the court thought HRSA "has adopted a contrary view." Op. at 26. But HRSA has not suggested that covered entities *cannot* bring ADR claims challenging manufacturers' contract pharmacy policies. It has adopted a *rule of decision*—in keeping with the court decisions in *Novartis* and *Sanofi*— under which ADR claims premised on contract pharmacy arrangements will be rejected on the merits *because policies like Novartis's are allowed by federal 340B law*. PI Mot. at 21 & n.9. That Chapter 288 would lead to results contrary to those ADR proceedings does not suggest it addresses a different topic. It proves the opposite: that this state law would destroy federal uniformity. PI Reply at 14–15. *Frey* also asserted that manufacturers have not needed claims data in the past, but this is both incorrect as a historical matter and irrelevant to the proper preemption

September 26, 2025

analysis. PI Reply at 15–17. And the *Frey* court did not address HRSA's rebate pilot program at all. *But see id.* at 17–18.

On the dormant Commerce Clause, the State is right (at 2) that *Frey* "adopt[ed] the reasoning in *PhRMA v. Walsh*, 538 U.S. 644, 669 (2003)." But that is not a point in the decision's favor. *Walsh* was about direct—and voluntary—negotiations between a state Medicaid plan and drug manufacturers. 538 U.S. at 654–655. That is why the Court explained that the state law did "not insist that manufacturers sell their drugs to a wholesaler for a certain price." *Id.* at 669. There is nothing direct—much less voluntary—about Chapter 288. Further, neither the Government nor the *Frey* court has explained how manufacturers—the target of the state law—could comply without changing the terms of their sales to wholesalers by significantly reducing prices in those out-of-state transactions, even if the wholesalers separately provide drugs to Rhode Island contract pharmacies at the 340B price. No such method exists. Verified Compl. ¶¶ 122–123.

Finally, the Supreme Court has not "limited" the rule against extraterritorial price controls. *Contra* Op. at 29. The Court instead reaffirmed the prohibition against "a law that *directly* regulated out-of-state transactions by those with *no* connection to the State." *National Pork Producers v. Ross*, 598 U.S. 356, 376 n.1 (2023). The Court also cited approvingly one of the two circuit decisions on which Novartis relies. *Id.* at 374 (citing *Association for Accessible Meds. v. Frosh*, 887 F.3d 664 (4th Cir. 2018)). And the second decision confirms that *Pork Producers* does not endorse laws like Chapter 288. *Association for Accessible Meds. v. Ellison*, 140 F.4th 957, 960 (8th Cir. 2025). *Frey* ignored both *Frosh* and *Ellison*—further undermining its persuasiveness.

This Court should preliminarily enjoin Chapter 288's enforcement.

Respectfully submitted,
*/s/ Susan Cook*
Susan Cook

*/s/ James P. McGlone*
James P. McGlone

Counsel for Novartis
Pharmaceuticals Corporation

cc: All counsel of record
(via CM/ECF)

4902-1688-6125